## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **Aerotech Ground Support Services,** | |
| Plaintiff, | **CASE NO. _____** |
| v. | ***Jury Trial Demanded*** |
| **Delta Airlines, Inc.,** | |
| Defendants. | |

## COMPLAINT

The above-named Plaintiff (**"Plaintiff"** or **"Aerotech"**) respectfully submits this Complaint, alleging facts and seeking damages and other relief as follows.

### THE PARTIES

1.

Plaintiff Aerotech is a Canadian business enterprise, with its principal place of business in Dorval, Quebec, Canada.

2.

Defendant Delta Airlines, Inc. (**"Defendant"** or **"Delta Airlines"**) is a Delaware Corporation with its principal office at 1030 Delta Blvd., Dept 982, Atlanta, Georgia 30354. Defendant's registered agent for service of process is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## VENUE AND JURISDICTION

3.

This Court has subject matter jurisdiction because the matter is between a citizen of a State and a citizen or subject of a foreign state, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.

This Court is a proper venue because, among other reasons, Delta Airlines has its principal office in Atlanta, and the contract at issue provides that disputes shall be litigated in the state and federal courts situated in Fulton County, Georgia.

5.

This Court has personal jurisdiction over Delta Airlines because, among other reasons, Delta Airlines has its principal office in Georgia, and because in the subject contract, Delta Airlines has consented to venue and jurisdiction in this State and Court.

## GENERAL FACTS

6.

Beginning in March 2012, Aerotech and Delta Airlines were parties to a written contract—namely the Agreement for Maintenance of Ground Support Equipment (GSE) Between Delta Airlines, Inc. and Aerotech Ground Support Services (Delta Contract Number MA-2012-03665) (**"the Contract"**).

7.

For the period from March 31, 2017, until March 2022, the Contract also included an Annex, *i.e.*, Airport Annex YUL.1-Location, GSE Maintenance Services and Rates (**"the Annex"**).

8.

A true and correct copy of the Contract and the Annex is attached hereto as **Exhibit A**.

9.

Under the Contract and the Annex, beginning April 1, 2017, Delta was required to pay a "Fixed Monthly Fee" of $20,240.03 (**"the Fixed Monthly Fee"**).

10.

Although the Annex included a "monthly hours goal" and "hourly rate," it specified that those items were "for reference purposes only, and the actual hours expended by [Aerotech] do not affect the Fixed Monthly Fee."

11.

On or about April 1, 2020, Delta Airlines employee Timothy Sears phoned Aerotech (specifically, Tom Folio) and asked Aerotech for permission to defer payment of the Fixed Monthly Fee. Specifically, he asked Aerotech to accept initial payments in the amount of only one half of the Fixed Monthly Fee.

12.

Aerotech agreed to defer half of the Fixed Monthly Fee payments—but continue providing services under the Contract and Annex—on the strength of Mr. Sears's representation that Delta would ultimately pay the deferred amounts.

13.

Aerotech deferred half of the Fixed Monthly Fee payments from April 2020 through August 2021.

14.

Delta Airlines thereafter refused to pay the deferred amounts and is persisting in its refusal to do so despite many requests from Aerotech.

15.

Defendant's refusal to pay the amounts it owed under the Contract and Annex are wrongful and constitute breach of the Contract/Annex.

16.

Delta Airlines asked for the deferral in bad faith, with a fraudulent intent never to pay the deferred amounts at all.

17.

The principal amount of the unpaid Fixed Monthly Fee payments exceeds one hundred and seventy thousand dollars.

## COUNT ONE—BREACH OF CONTRACT

18.

Plaintiff re-alleges and incorporates by reference all the allegations in paragraphs 1 through 17, above, as if fully re-stated herein.

19.

The Contract, as supplemented by the Annex, constitutes a legally binding contract.

20.

Delta Airlines has breached the Contract, as supplemented by the Annex, by failing and refusing to pay the full Fixed Monthly Fee payments.

21.

The breaches by Delta Airlines have caused damages to Aerotech, proximately and directly, in an amount to be proven at trial.

22.

Delta Airlines has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense.  As a result, Plaintiff is entitled to an award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

23.

The actions by Delta Airlines show willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences. Accordingly, Plaintiffs are entitled to punitive damages.

24.

Plaintiff is entitled to and demands judgment in its favor on this Count awarding it compensatory damages in an amount to be proven at trial; pre-judgment and post-judgment interest; costs; expenses of litigation, including reasonable attorneys' fees; and all other relief permitted under law.

## COUNT TWO—FRAUD

25.

Plaintiff re-alleges and incorporates by reference all the allegations in paragraphs 1 through 17, above, as if fully re-stated herein.

26.

Through Timothy Sears, Delta Airlines fraudulently induced Aerotech to continue providing services under the Contract/Annex while receiving only a

portion of the Fixed Monthly Fee payments by promising that Delta Airlines would eventually pay the deferred amounts.

27.

At the time Delta Airlines made that representation, it had the present intent never to pay the deferred portions of the Fixed Monthly Fee payments.

28.

At the time Delta Airlines represented that it would eventually pay the entire Fixed Monthly Fee amounts, its intent was fraudulent. It aimed to induce Aerotech to continue providing services by the promise to pay and then to break that promise after the services were provided.

29.

Plaintiff Aerotech relied to its detriment on the fraudulent representation by, among other things, continuing to provide services without receiving full payment of the Fixed Monthly Fee amounts.

30.

The fraud by Delta Airlines has caused Plaintiff damages, directly and proximately, in an amount exceeding one hundred seventy thousand dollars, with the precise amount to be proven at trial.

31.

Delta Airlines has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense. As a result, Plaintiff is entitled to an award of attorneys' fees and expenses of litigation pursuant to, among other provisions of law, O.C.G.A. § 13-6-11.

32.

The actions by Delta Airlines show willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences. Accordingly, Plaintiff is entitled to punitive damages.

33.

Plaintiff is entitled to and demands judgment in its favor under this Count awarding it compensatory damages in an amount to be proven at trial; pre-judgment and post-judgment interest; punitive damages; costs; expenses of litigation, including reasonable attorneys' fees; and all other relief permitted under law.

## PRAYER FOR RELIEF

Aerotech respectfully prays for the following relief:  (a) a pretrial conference; (b) trial by jury as to all matters that may be so tried; (c) judgment in in its favor awarding all the relief specific in the counts above including, without limitation, general damages, special damages, all compensatory damages (general, special, or other), punitive damages, prejudgment and post judgement interest, expenses of litigation and attorney's fees, costs, and all other and further relief available under the law that the Court deems appropriate.

Respectfully submitted this 17th day of May 2024.


POOLE HUFFMAN, LLC

*/s/ Lucas W. Andrews*
Lucas W. Andrews
Ga Bar No. 019533
luke@poolehuffman.com

3562 Habersham at Northlake
Building J, Suite 200
Tucker, GA 30084
Tel.  (770) 988-6574
Fax.  (888) 709-5723

# EXHIBIT A

*2012 - 2017*

## AGREEMENT FOR MAINTENANCE OF GROUND SUPPORT EQUIPMENT (GSE)
### (Delta Receives Services )

**By and between:**

| | | |
|---|---|---|
| DELTA AIR LINES, INC.<br>1010 Delta Blvd<br>Atlanta, GA 30354 | AND | Aerotech Ground Support Services<br>29 Magil Rd.<br>Dollard des Ormeaux ,Quebec, Canada<br>H9G-1N4 |
| hereinafter Delta | | hereinafter Contractor |

### W I T N E S S E T H:

**WHEREAS**, Delta is a United States certificated air carrier pursuant to U.S. Federal Aviation Regulations Part 121 and in connection therewith requires ground support equipment maintenance as more fully set forth herein at the location(s) specified below; and

**WHEREAS**, Contractor has the capability and is willing to perform such maintenance for Delta and Delta affiliates on the terms and conditions specified below.

**NOW, THEREFORE**, for and in consideration of the mutual promises and covenants hereinafter set forth, the parties hereto agree as follows:

1. **TERM**
   This Agreement shall be effective as of March 18, 2012, and shall remain in effect for a period of five years (5) thereafter unless terminated earlier as provided in Section 7. Delta may, at its sole option, extend the Term for an additional two (2) years by providing written notice to Contractor at least thirty (30) days before the end of the initial term.

2. **LOCATION OF SERVICES**
   Services will be accomplished for equipment specified by Delta and located at:Pierre Elliott Trudeau International (YUL) in Montreal, Quebec, Canada (the "Airport") .

3. **DEFINITIONS**
   A. "Ground Support Equipment" or "GSE" means Delta or Delta affiliate owned or leased, motorized and non-motorized equipment, stationary ground power units, and other systems and equipment used to perform Delta's ground operations. Examples include, but are not limited to: baggage tractors, baggage carts, aircraft air starting and air conditioning equipment, Unit Loading Devices (ULD's), ULD transporters, passenger loading bridges, and aircraft deicing equipment.
   B. "Routine Maintenance" means the Preventive Maintenance Inspections (PMI's), PMI repairs (including touch-up painting), and other scheduled (annual and special) inspections. Painting of motorized, non-motorized, and stationary GSE is considered Routine Maintenance unless the painting results from accident or abuse.
   C. "Non-routine Maintenance" means repairs due to breakdown, heavy maintenance, and deferred maintenance.
   D. "Services" or "Work" means the provision of Routine Maintenance, Non-routine Maintenance or emergency maintenance by Contractor on Delta's GSE.

4. **SCOPE**
   Delta's maintenance program includes Routine Maintenance, Non-routine Maintenance and emergency maintenance as well as painting of motorized, non-motorized, and stationary GSE. As conditions warrant, as specified by Delta, and as coordinated between Delta and Contractor, Services to be provided by Contractor may be routine, scheduled, on-call, or a combination thereof.

5. **CONTRACTOR OBLIGATIONS AND STANDARDS**
   Contractor shall:
   A. Furnish to Delta GSE maintenance Services described herein as specified by Delta.
   B. Furnish all Services as an independent contractor. All personnel utilized by Contractor in the furnishing of such Services shall be employees of Contractor and under no circumstances shall be deemed employees of Delta. Contractor shall be fully responsible for all acts and omissions of such personnel and shall defend, indemnify and hold harmless Delta from any damage, claim or liability of any kind resulting from such acts or omissions. Contractor shall bear sole responsibility for payment of compensation to its personnel. Contractor shall withhold (if applicable), pay and report, for all personnel assigned to Delta's work, federal, state and local income tax withholding, social security taxes, employment head taxes, and unemployment insurance applicable to such personnel as employees of Contractor. Contractor shall bear sole responsibility for any health or disability benefit, retirement benefits, or welfare, pension or other benefits (if any) to which such personnel may be entitled. Contractor agrees to defend, indemnify, and hold harmless Delta, Delta's officers, directors, employees and agents, any benefit plan sponsored by Delta, and any fiduciaries or administrators of any such benefit plans, from and against any claims, liabilities, or expenses relating to any claim by Contractor's personnel for compensation, tax, insurance, or benefits from Delta or any benefit plan sponsored by Delta.
   C. Furnish, unless otherwise provided herein, all personnel, material, equipment, and supplies necessary to perform the required Services, with such costs to be included in the fees set forth in this Agreement.

AEROTECH_000001

D. Provide Services in a timely, competent and professional manner, that are of the first-class, with good quality supplies, materials, equipment, and workmanship.

E. Put forth its best efforts to ensure that Delta's GSE will be operational to meet flight schedule demands.

F. Comply with instructions provided by Delta's designee(s), who shall be authorized to request Services on behalf of Delta, regarding standards, procedures, and practices to be followed in furnishing the required Services. In the absence of such instructions, Services will be in accordance with accepted standards, practices, and procedures normally followed in the industry in connection with such operations.

G. Perform all Services in a manner which ensures health and safety. Contractor personnel shall comply with all laws, rules, regulations and procedures relating to health and safety. Contractor personnel shall wear all personal protective equipment necessary to protect such persons from potential hazards, including, without limitation, all personal protective equipment required by applicable laws, rules, regulations and procedures.

H. Comply with all applicable laws, rules, regulations, and procedures governing the Services to be provided. Contractor shall obtain all licenses and permits required by any governmental authority for the performance of the contracted Services and shall pay all fees and charges therefor. The foregoing obligations are in addition to those provided in Section 10 of this Agreement.

I. Ensure that personnel who perform the required Services receive all operational and safety training necessary for the safe and competent performance of such Services, including, without limitation, any specialized training provided or required by Delta and any training required by applicable laws, rules, regulations, and procedures. Supporting documentation must be maintained and updated on a regular basis by Contractor (to ensure Contractor's compliance hereof) for the time specified by applicable laws, rules, regulations, and procedures or, if none specified, for a reasonable time. Delta shall have the right, but not the duty, to audit training records as it deems prudent to ensure compliance with this requirement.

J. Keep Delta's designee(s) advised of the location and telephone number(s) at which Contractor's employee with responsibility for overseeing performance of the Services may be contacted; provided, however, the availability of such employee shall not obligate Delta to communicate any information to Contractor concerning emergencies, accidents or substandard performance.

K. Maintain (via computer when available) service records of Contractor's performance in accordance with Delta approved documentation, and store said records (via computer when available) for each piece of equipment for three (3) years.

L. Provide service records at time intervals, locations, and to Delta designees as specified by Delta.

M. Purchase parts and miscellaneous service oriented supplies not provided by Delta. Records and accounting methods for purchases must be approved by Delta.

N. Utilize, as available, Contractor's facilities, tooling, and equipment as necessary to support Delta.

O. Store parts and supplies (Delta supplied and other as necessary) needed to comply with Delta's operational requirements.

P. Utilize only Delta approved manuals including but not limited to repair, overhaul and maintenance manuals, and applicable illustrated parts catalogs in the performance of the required Services.

Q. Accomplish modifications only as directed by Delta.

R. Keep all tools used by Contractor to perform the required Services properly calibrated and operational at all times.

S. Return all tooling and equipment provided by Delta in that condition in which it was originally received by Contractor, normal wear and tear excepted, upon termination of this Agreement.

T. Notify Delta when warranty claimable events arise and are detected for equipment and sub-components covered by warranty.

U. Provide any recurrent training necessitated by employee turnover at its sole cost and expense.

## 6.  DELTA OBLIGATIONS

Delta shall:

A. Provide, as deemed necessary by Delta, initial training in Delta procedures to Contractor personnel who will perform maintenance Services for Delta.

B. Provide, at Delta's election, parts and miscellaneous supplies.

C. Pay Contractor pursuant to the payment provisions of this Agreement.

## 7.  TERMINATION OF AGREEMENT AND REDUCTION IN WORK

A. This Agreement is non-exclusive, and Delta may cause its own employees, or engage its affiliates or third parties, to perform any or all of the Services at Delta's option.

B. Delta may terminate this Agreement, without cause, upon not less than forty-five (45) days' prior written notice by Delta to the Contractor.

C. Contractor may stop work or terminate this Agreement if Delta fails to pay undisputed amounts when due, in accordance with this Agreement, after thirty (30) days written notice by Contractor to Delta of such failure of payment.

D. If Contractor files for bankruptcy, has an involuntary petition filed against it which is not dismissed within thirty (30) days, dissolves, is insolvent, fails to promptly pay for materials or services for which it has received payment from Delta, creates or permits the creation of any lien on any property or premises of Delta, makes an assignment or arrangement for the benefit of its creditors, refuses or neglects to perform the work properly and diligently (including failure to perform as a result of strike, walkout, or labor dispute affecting Contractor or others), or fails to perform any of the provisions of this Agreement, Delta may, at its option, by written notice to Contractor, declare Contractor in default, terminate Contractor's right to proceed with all or part of the work, and take control or possession thereof and of any of Delta's materials, vehicles, equipment, supplies, or tools located at Contractor's facility and finish such terminated work by such means as it sees fit; provided, however, with respect to any refusal or neglect by the Contractor to perform the work properly and diligently, or failure to perform under other provisions of this Agreement, the Contractor shall have ten (10) days from receipt of written notice of such default from Delta to cure the default. Upon termination pursuant to this provision or Section 7.B, Contractor shall thereupon assign to Delta any contracts for goods or services in support of the work, if any, selected by Delta to be so assigned.

E. If Delta files for bankruptcy, has an involuntary petition filed against it which is not dismissed within thirty (30) days, dissolves, or makes an assignment or arrangement for the benefit of its creditors, Contractor may, at its option, by written notice to Delta, declare Delta in default, stop work or terminate this Agreement.

F. Upon termination of this Agreement for any reason, Delta shall reimburse Contractor for any undisputed unpaid cost of the work performed by Contractor and due it under this Agreement. Delta can deduct from the amount due any amount that Delta may be required to pay to a third party due to nonpayment by Contractor and any damages, costs or expenses Delta

AEROTECH_000002

may incur or suffer if termination is made pursuant to Section 7.D. As a condition of receiving payments referred to in this Section, Contractor shall execute and deliver to Delta any and all instruments that may be required to transfer property to Delta, or otherwise required for the orderly termination of this Agreement.

G.    Upon termination or expiration of this Agreement, Delta shall take possession of all materials, vehicles, equipment, supplies, tools and facilities owned by Delta or for which Contractor shall have been reimbursed by Delta (except for items as to which Delta shall have accepted a credit for salvage value). Delta shall have no obligation to purchase any item from Contractor, even if Contractor has not been reimbursed for the costs or the costs have not been fully amortized, unless Delta expressly agreed in writing to do so with respect to the particular item prior to the acquisition of such item by Contractor.

8.    **INSURANCE**

A.    At all times during the term of this Agreement, Contractor agrees, with respect to the operations and services contemplated in this Agreement, to carry and maintain in effect at its own cost and expense the following insurance covering its operations and activities at all locations where Services are to be provided to Delta hereunder:

1.    Airport and ground general liability insurance covering bodily injury, including death and property damage, product liability, hangerkeepers, and completed operations in an amount not less than Five Million Dollars ($5,000,000) combined single limit per occurrence for bodily injury and property damage. This insurance shall include contractual liability and shall be in such form as reasonably required by Delta. The insurance shall name Delta as additional insured to the extent of Contractor's indemnity obligations hereunder and shall contain a standard cross-liability endorsement.

2.    Contractor agrees to maintain Workers' Compensation insurance with a combined single limit per occurrence in the greater of the amount of One Million Dollars ($1,000,000) or the amount required by law, and Employer's Liability insurance in the amount of One Million Dollars ($1,000,000) to cover its employees. Contractor agrees to be solely and fully responsible for the payment of all Workers' Compensation benefits for its employees. Notwithstanding anything to the contrary contained herein, however, if Workers' Compensation Insurance is elective rather than compulsory in any jurisdiction in which the services are provided pursuant to this Agreement, if said jurisdiction permits self-insurance, and if Delta has approved in advance and in writing Contractor's self-insurance program for Workers Compensation Insurance for such jurisdiction , then Contractor may self-insure against such claims in such jurisdiction until such time as Delta revokes its approval of such self-insurance program. Contractor shall cause its insurer to include a waiver of subrogation in favor of Delta.

3.    Contractor agrees to maintain Automobile Liability Insurance with minimum limits for Bodily Injury and Property Damage equal to Five Million Dollars ($5,000,000) Combined Single Limit for each occurrence covering all liability arising out of any vehicle operated by Contractor and used in the performance of the express or implied terms of this Agreement. The policy shall name Delta as an additional insured to the extent of Contractor's indemnity obligations hereunder and shall contain a standard cross-liability endorsement.

B.    Contractor shall obtain insurance required by this Agreement from a financially sound insurance company of recognized responsibility and shall furnish Delta with a certificate of insurance evidencing such coverage prior to commencing Services under this Agreement. Such insurance policies shall be considered primary, without contribution from any other insurance which is carried by Delta. All insurance policies shall provide that the insurance shall not be invalidated by any action or inaction of Contractor, that Contractor agrees to waive all rights or subrogation against Delta and that the insurance shall continue in full force and effect for at least thirty (30) days after Delta receives written notice of cancellation, termination or material alteration.

9.    **INDEMNIFICATION**

To the fullest extent permitted by law, Contractor shall release, indemnify, defend and hold harmless Delta and its respective directors, officers, employees and agents (collectively, the "Indemnified Parties" and individually, an "Indemnified Party") from and against any and all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever (including but not limited to interest, court costs and attorney's fees), to the extent arising out of or resulting from any act(s) or omission(s) by Contractor (or anyone directly or indirectly employed by Contractor or anyone for whose acts Contractor may be liable) in the performance or nonperformance of the services or other obligations under this Agreement or in the use or occupancy of any facilities or equipment provided by Delta, including but not limited to injury to or death of any person, damage to or destruction of any property, real or personal (including but not limited to property owned, leased or under the control of Delta), and liability or obligations under or with respect to any violation of federal, state and local laws, regulations, rules, codes and ordinances (including but not limited to those concerning environmental protection). This Section shall apply regardless of whether or not the damage, loss or injury complained of arises out of or relates to the negligence (whether active, passive or otherwise) of, or was caused in part by, an Indemnified Party. However, nothing contained in this Section shall be construed as a release or indemnity by Contractor of an Indemnified Party from or against any loss, liability or claim arising from the gross negligence or willful misconduct of that Indemnified Party. The indemnification obligations of this Section shall survive termination or expiration of this Agreement.

IN NO EVENT SHALL DELTA OR CONTRACTOR BE LIABLE TO THE OTHER FOR, OR HAVE ANY DUTY FOR INDEMNIFICATION OR CONTRIBUTION FOR, ANY CLAIMED INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES WHETHER IN CONTRACT OR TORT (INCLUDING STRICT LIABILITY AND NEGLIGENCE CLAIMS), INCLUDING BUT NOT LIMITED TO, LOSS OF REVENUE, OR LOSS OF USE OR ANTICIPATED PROFITS, EXCEPT (A) AS SPECIFICALLY SET FORTH IN THIS AGREEMENT, (B) FOR AMOUNTS PAYABLE BY THE INDEMNIFIED PARTY TO A THIRD PARTY OR (C) FOR THOSE CLAIMS WHICH RESULT FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNIFYING PARTY.

10.    **SECURITY CONSIDERATIONS**

Contractor agrees that in the performance of this Agreement it is of paramount importance to maintain the security and safety of passengers, the general public, and all personnel employed at the Airport and to safeguard the security and integrity of all personal, public, and corporate property. In this regard, Contractor agrees, in accordance with applicable laws, to take those actions necessary to accomplish this purpose, including, but not limited to, the actions outlined in this Section.

Page 3

AEROTECH_000003

A. Background Checks.
   1. Contractor warrants that it has performed and will continue to perform employment and access investigations in accordance with the FAA's Air Carrier Standard Program, as in effect from time to time, including, without limitation, requirements of 49 USC §44936 and FAA regulations promulgated pursuant thereto at 14 CFR Parts 107 and 108, of all persons hired by Contractor after November 1, 1985, who have unescorted access to any area on an airport controlled for security reasons. Such employment and access investigations shall be conducted, to the extent allowable by law, to include, at a minimum, reference and prior employment histories necessary to verify representations made by each employee/applicant relating to employment in the preceding five years, verifications of identity, and, in certain cases, criminal history record checks as more particularly required in said regulations.
   2. Contractor shall perform background checks, to the extent allowable by applicable law, which will include, but not be limited to, a five year criminal history check for all persons Contractor has hired or will hire. Contractor will also conduct a five year check of the person's state motor vehicle record for all persons Contractor has hired or will hire who may operate a motor vehicle on the Airport Operating Area at the Airport (the "AOA").
   3. Employment and access investigations, background checks, and motor vehicle checks shall be completed prior to Contractor allowing any of its employees, agents, or representatives unescorted access to any airport area controlled for security reasons or allowing such persons to operate motor vehicles on the AOA.
   4. On or before the effective date of this Agreement and to the extent required by applicable laws, regulations, and orders, Contractor warrants that it will establish and thereafter maintain a drug and alcohol testing program for personnel employed by the Contractor who perform sensitive safety related and security related functions as defined by the FAA's Anti-Drug Program for Personnel engaged in Specified Activities (the FAA's Anti-Drug Program). Contractor agrees that such program will comply with all requirements set forth by the FAA. To the extent permitted by law, if Contractor employs personnel who are not covered by the FAA's Anti-Drug Program but who will have unescorted access to any airport area controlled for security reasons, such personnel shall be subject to pre-employment drug testing by Contractor for the same substances and in accordance with the same procedures as required the FAA's Anti-Drug Program.
   5. No Contractor personnel shall be associated with directly supervising or performing services under this Agreement who, as a result of investigations or other knowledge or cause, could be considered by a reasonable and prudent person as a potential security risk or give rise to concern regarding potential work performance to the levels expected by Delta and this Agreement.
B. Contractor shall keep at the Airport full and detailed records demonstrating its compliance with this Section as to each employee. Delta shall have the right, but not the duty, to audit Contractor's employment records as it deems prudent to ensure Contractor's compliance with this Section. Any such audit shall be conducted at Delta's sole expense during normal business hours upon reasonable notice by Delta to Contractor. Delta may terminate this Agreement if it finds any evidence which indicates that Contractor has not complied with the obligations imposed by this Section.

## 11. COSTS TO BE REIMBURSED TO CONTRACTOR
A. The labor charges specified in Section 29 based on the actual hours expended to perform the Services.
B. The cost of initial training specified in Section 6.A for Contractor's initial staff (including initial staff arising from any subsequent complement increase approved in writing by Delta) dedicated to providing Services to Delta. Reimbursement shall be at the applicable hourly rate(s) specified in Section 29 for those hours actually spent during training. If training occurs in a city other than where the Airport is located, Delta shall provide air transportation on Delta to such location, hotel accommodations at Delta's negotiated corporate rates, and shall reimburse actual meal expenses (subject to a maximum of Delta's published per diem meal allowance then in effect for ground employees). No cash reimbursement for air transportation shall be provided, and other training related costs shall not be reimbursable unless approved in writing by Delta and then only at actual cost. Training and Services performed in connection with this Agreement shall be subject to the terms and provisions of the Agreement, including, without limitation, indemnification provisions of Section 9.
C. Other costs at rates specified by Section 29, or incurred in the performance of the work if and to the extent approved in advance in writing by Delta.

## 12. COSTS NOT TO BE REIMBURSED
Notwithstanding any other provision of this Agreement, the term "cost of the work" shall not include:
A. Cost of performing background checks and drug and alcohol screening tests in order to comply with Section 10.
B. Training costs due to turnover in Contractor's personnel as detailed in Section 5.
C. The amount of any airport fees or charges applicable to Contractor's performance of the Services, unless such airport fees or charges are for Delta's account.
D. Costs due to the fault or negligence (in either case, including, but not limited to waste or mismanagement) of Contractor, anyone directly or indirectly employed by Contractor or for whose acts Contractor may be liable, include, but not limited to, cost of or related to defective of non-conforming work, or disposal of material or equipment wrongly supplied.
E. Costs in connection with or in anticipation of any claim against Delta under this Agreement, whether or not such claim becomes the subject of a judicial or other formal proceeding.
F. Costs of civil penalties or fines levied by any federal, state or local authority, including costs to defend such actions, due to the acts of omissions of Contractor, its officers, directors, employees, agents or subcontractors.
G. Overhead or general expenses of any kind, except for any that are both not excluded by other provisions in this Section and are expressly included in any of the specified items listed in Section 11.
H. The cost of any item not specifically included in the items described in Section 11.

## 13. TAXES
A. All amounts payable under this Agreement chargeable to Delta are exclusive of any and all sales, use, customs, excise, value added, ad valorem or other similar tax, assessment, duty or any such tax that is measured by the net or gross income or excess profits, receipts, capital, franchise, net worth or business privilege taxes of the Contractor, or similar governmental charge or fee chargeable on account of the payment of any amounts from Delta to Contractor for the provision of goods, services or facilities by Contractor to Delta pursuant to this Agreement, and all penalties assessed thereon.

Page 4

AEROTECH_000004

B. Contractor shall be registered to collect sales tax and shall be responsible for the collection of applicable sales and use taxes in jurisdictions where such registration is required by law. Delta shall pay to Contractor any sales tax billed by Contractor imposed by any taxing authority required to be paid by Contractor or by Delta as a result of the performance of this Agreement. If claim is made against Contractor for the applicable sales tax, Contractor shall notify Delta immediately upon receipt of said notice. If requested by Delta in writing, Contractor shall, at Delta's expense, take such action as Delta may reasonably direct with respect to such asserted liability and shall not pay any such charges, except under protest, if payment is necessary. If payment is made, Contractor shall, at Delta's expense, take such action as Delta may reasonably direct to recover payment and shall, if requested, permit Delta in Contractor's name to file a claim or commence an action to recover such payment. If all or any part of any charges are refunded or credited, Contractor shall repay Delta such part thereof as Delta shall have paid, including any interest received thereon. The obligations of this Section 13 shall survive termination or expiration of this Agreement.

## 14. DISCOUNTS, REBATES, AND REFUNDS

All cash discounts shall accrue to Delta. All trade discounts, rebates and refunds and all returns from sale of surplus materials and equipment shall accrue to Delta, and Contractor shall make provisions so that they will be obtained.

## 15. ACCOUNTING RECORDS

With respect to all invoices under this Agreement, Contractor shall keep full and detailed records and books of account on the basis of its accounting methods as of the effective date of this Agreement. Invoices to Delta shall be in a format and contain information as may be reasonably specified by Delta. Upon reasonable notice to Contractor and during regular business hours Delta, or its nominee, shall have the right to audit and have access to the books of account, receipts, and records pertaining to Contractor's invoices. Any such audit shall be at Delta's sole expense. Delta shall also be afforded access to all of Contractor's other records, books, correspondence, instructions, memoranda, and similar data relating to this Agreement and any of the work. Contractor shall preserve such documents and other records to which Delta has access rights under this Section without additional compensation therefor for three (3) years, or such longer period as may be required by law, after termination or expiration of this Agreement. If as a result of any such audit or otherwise it is determined that Delta has paid any excess charges for the work, Delta shall be entitled to immediate refunds for any such excess charges paid by Delta.

## 16. GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, USA, excluding its laws regarding conflict or choice of law, and Contractor voluntarily submits itself to the jurisdiction of the state and federal courts situated in Fulton County, Georgia, for any dispute arising hereunder.

## 17. FORCE MAJEURE

If either party's operations at the Airport are halted or substantially interrupted or decreased by reason of strike, labor dispute, picketing, action or interference of governmental authorities (not caused by the acts or omissions of such party), riots, terrorist attack, act of God or other similar and unforeseeable causes reasonably beyond the control of such party, this Agreement (but not payment for services previously provided hereunder) may be suspended for the duration of such halted or decreased operations, on twenty-four (24) hours' notice to the other party.

## 18. ENTIRE AGREEMENT

This Agreement constitutes the complete agreement of the parties with respect to the subject matter hereof and supersedes all prior negotiations, agreements, representations and understandings, if any, between the parties concerning the same, whether written or oral.

## 19. SUBCONTRACTS; ASSIGNMENT

Contractor shall not subcontract out or delegate the services to be provided herein without the prior written consent of Delta. All subcontracts must be approved in writing by Delta prior to execution and shall conform to any applicable requirements of this Agreement. This Agreement shall not be assigned, in whole or in part, without the prior written consent of Delta. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties, their respective successors and assigns.

## 20. MODIFICATIONS AND AMENDMENTS

This Agreement shall not be modified or amended in any respect except by written instrument duly executed by or on behalf of each of the parties to this Agreement.

## 21. NO WAIVER

No provision of this Agreement shall be deemed to have been waived by Delta unless such waiver is in writing and signed by Delta, nor shall any custom or practice which may evolve between the parties in the administration of the terms hereof be construed to waive or lessen the right of Delta to insist upon the performance by Contractor in strict accordance with the terms hereof.

## 22. SEVERABILITY

If any provision or term of this Agreement shall be determined to be illegal, invalid or unenforceable, the remainder of this Agreement shall not be affected thereby and shall remain valid and enforceable to the fullest extent permitted by law.

## 23. REMEDIES CUMULATIVE

Each right and remedy of Delta provided for in this Agreement, or now or hereafter existing at law, in equity or by statute or otherwise, shall be cumulative and concurrent, and the exercise or beginning of the exercise of any one or more of such rights or remedies shall not preclude the exercise of that right or remedy in the future or the exercise of any other right or remedy at any time.

## 24. ENVIRONMENTAL COMPLIANCE

Contractor shall be responsible for adhering to an aggressive program of compliance with all environmental laws and regulations. In absence of governmental regulation, Contractor shall operate in an environmentally responsible manner. Employees who manage or handle hazardous waste must receive training in hazardous waste management annually. Training records are to be maintained reflecting such training. Nothing contained in this Section is intended to lessen or reduce in any manner the more general obligations of Contractor set forth in this Agreement insofar as they concern compliance with environmental laws and regulations.

## 25. NONDISCRIMINATION

Page 5

AEROTECH_000005

Without limiting the generality of any of the provisions of this Agreement, the Contractor in its operations at the Airport, and the exercise of any privileges under this Agreement, shall not on the grounds of race, creed, sex, color or national origin discriminate or permit discrimination against any person or group of persons in any manner whatsoever and shall comply with Part 21 of the Regulations of the Office of the Secretary of the Department of Transportation, as it may be amended, and any other present or future laws, rules, regulations, orders, or directions of the United States of America with respect thereto which from time to time may be applicable to the Contractor's operations on the Airport, whether by reason of agreement between the operator of the Airport and the United States Government or otherwise.

26. **NOTICES**

Any notices, requests, or communications required or permitted to be given herein shall be in writing and shall be delivered by hand, by overnight courier, by facsimile transmission ("fax") or mailed by United States registered or certified mail, return receipt requested, postage prepaid, and addressed to the respective parties,

in the case of Delta as follows:    and    in the case of Contractor as follows:

**DELTA AIR LINES, INC.**                    **Aerotech Ground Support Services**
P.O. Box 20706                              {SUPPLIER ADDRESS}
Atlanta, Georgia 30320-6001                 {SUPPLIER ADDRESS}

Attention:  ACS Supply Chain
Dept:       801
Fax         404-677-3165                     Telephone:
                                             Fax:

Any such notice, request, or other communication shall be considered given on the date of hand or courier delivery if delivered by hand or overnight courier, on the date of receipt if delivered by fax, or on the date of deposit in the United States mail as provided above. Rejection or other refusal to accept or inability to deliver because of changed address or fax number of which no notice was given shall not affect the validity or the effectiveness of the notice, request or other communication. By giving at least ten (10) days' prior written notice thereof, either party may from time to time and at any time change its mailing address or fax number hereunder.

27. **APPLICATIONS FOR PAYMENT**

A. Invoices; Billing Address   Each month Contractor shall submit an invoice to Delta, reflecting the total cost of the Work performed by Contractor during the preceding month. Such invoice shall be accompanied by all documentation necessary to support all expenses for such month, including, without limitation, payrolls for all labor and all invoices and bills for which payment has been made and for which reimbursement is sought. The invoice shall be submitted via InvoiceWorks.

28. **PAYMENTS TO CONTRACTOR**

A. Delta will review Contractor's invoices, in accordance with applicable sections of this Agreement, and undisputed amounts shall be payable within forty-give (45) days of receipt of invoice. Delta shall have the option not to pay any amount if Delta disputes its reasonableness or necessity. Delta and Contractor shall make a good faith effort to resolve such disputes. Delta's review of any Contractor invoices, failure to dispute any amount claimed as due, or payment of any amount shall not waive any rights Delta has under this Agreement or otherwise, including, without limitation, the right to recover any amounts subsequently determined not to have been payable to the Contractor and the right to terminate this Agreement.

B. The final payment due under this Agreement shall be paid by Delta to Contractor within forty-five (45) days after the later of (1) expiration or termination of this Agreement, (2) receipt of Contractor's final invoice, and (3) completion of proper accounting for all Delta property.

29. **CONTRACTOR'S FEE/CHARGES TO BE REIMBURSED**

(All fees/charges are exclusive of Airport fees, which shall be paid by the party on whom they are imposed by the Airport operator.)

Delta will pay to Contractor for:

A. Total labor for the Services performed by Contractor at the following rates:

| Regular Maintenance Rate | | | | | |
|---|---|---|---|---|---|
| Qualification Type (as defined in Exhibit A) | **Effective Date of Rate** | **Hourly Rate** | **Monthly Hours** | **Fixed Monthly Fee** | |
| Non-Skilled | * Peak months in 2012 – 2017 | $30.00 | 30 | $1,200 | |
| Semi-Skilled and Skilled | March 18 to December 31, 2012 | $42.75 | 320 | $13,680 | |
| Semi-Skilled and Skilled | January 1 – December 31, 2013 | $43.60 | 320 | $13,952.45 | |
| Semi-Skilled and Skilled | January 1 – December 31, 2014 | $44.47 | 320 | $14,230.64 | |
| Semi-Skilled and Skilled | January 1 – December 31, 2015 | $45.36 | 320 | $14,514.57 | |
| Semi-Skilled and Skilled | January 1 – December 31, 2016 | $46.26 | 320 | $14,804.23 | |
| Semi-Skilled and Skilled | January 1 – March 17, 2017 | $46.26 | 320 | $14,804.23 | |

* Peak months are defined as April 1 – November 30 of any year.

B. Parts will be purchased through Delta preferred suppliers on Delta accounts except for emergency situations. In emergency situations, Delta will reimburse Contractor parts cost + two percent (2%).

C. All other costs, as specified in Section 11.C, at Contractor's cost without markup.

Page 6

AEROTECH_000006

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed in their names and on their behalf by a duly authorized representative as of the date and year first above written.

Company:      **DELTA AIR LINES, INC.**          **Aerotech Ground Support Services**

| | | | |
|---|---|---|---|
| By: | | By: | |
| Printed Name: | Brad Wilson | Printed Name: | |
| Title: | General Manager Supply Chain | Title: | |
| Date: | | Date: | |

AEROTECH_000007

Exhibit A
Contractor Personnel Qualifications

1. In addition to those qualifications provided in Section 5 of the Agreement, Seller shall provide for and invoice Delta based on the following personnel qualifications.

### 4.1 Non-Skilled

Responsible for doing preventive maintenance and repair of non-motorized ground support equipment. Consists of assembly and disassembly of different types of bag carts, cargo containers, transporters and dollies to make repairs to the damaged sections of the products. Candidates should be able to use tools such as impact guns, air drills, grinders, wrenches and other electrical equipment in order to make the repairs. The work will include taking off wheels and repairing them, working on the skin of the carts and replacing parts if needed and other light mechanical duties. MUST HAVE a good mechanical inclination and be familiar with using basic hand tools, High school diploma or GED, valid Driver's license. MUST pass an FAA 10 year criminal background check and an initial pre-employment drug screen.

### 4.2 Semi-Skilled

Responsible for utilizing the appropriate equipment and materials to accomplish all routine and non-routine maintenance functions on equipment, and specialized parts of equipment. Requires lifting up to 70 pounds. ASE Certification preferred.

### 4.3 Skilled

Requires a high school diploma or equivalent. Candidate should have successfully completed a two year degree at a post-secondary technical school or have three years documented Ground Support Equipment experience. Must be able to read and write in English and be able to comprehend and apply information contained in technical manuals. Should possess basic understanding of mechanical, electrical, hydraulic and pneumatic disciplines as they apply to industrial power systems. Must achieve a satisfactory score on the mechanical aptitude tests structured to determine the ability to perform essential job functions. Should meet the physical requirements which qualify a person to perform essential job functions including the ability to lift at least 70 pounds. Must possess at least one of the following requirements:

- Electrical/Relay knowledge: Understanding of and be proficient in troubleshooting 12 to 50 VAC/DC control circuits, 120 VAC single phase electrical circuits and control circuits, 480 VAC 3-phase electrical systems
- PLC Controls/Network: Understanding of and be proficient at troubleshooting programmable logic controllers and the associated computer network systems.
- Passenger loading bridges/Conveyor systems/Industrial maintenance: Knowledge of system operations for passenger loading bridges, system operation for conveyor systems and heavy equipment maintenance on hydraulics/electrical/mechanical on large industrial machinery
- A/C refrigeration: Knowledge of high pressure point of use pre-condition air systems, low pressure glycol chiller systems and have the ability to troubleshoot and isolate system failures, and the related software for both high and low pressure control circuit systems
- 400 Hz Generator/Inverter Ground Power: Thorough understanding of electronic and electrical components and proficiency at troubleshooting and rebuilding them is desired. A background in 400 Hz, the ability to test equipment as needed to perform repair/overhaul and the ability to read electrical schematics and drawings are required. Familiarity with Jetpower II, Jetpower Plus and CSI units.

Page 8

AEROTECH_000008

*2017 - 2022*

## Airport Annex YUL.1 - Location, GSE Maintenance Services and Rates

This Airport Annex is an Annex to the Services Agreement dated as of March 18, 2012, as amended (the "Agreement") (Delta Contract Number MA-2012-03665), between Aerotech Ground Support Services ("Contractor" or "Seller") and Delta Air Lines, Inc. ("Delta" or "Buyer") and is incorporated into such agreement as an Airport Annex as if fully set forth therein. This Airport Annex is effective from March 31, 2017 (the "Annex Effective Date") and covers only GSE Maintenance Services. This Airport Annex replaces nil.

This Annex covers Regular Maintenance Services Seller provides to Buyer at its location identified in Table A-1 and pricing for such Services shall be based on the Fixed Monthly Fee defined in Table A-1 below. The Parties will agree to any out of scope services in advance, and the Out of Scope Rate set forth in table A-1 will apply to such services.

**Table A-1\***

| Station | Regular Maintenance Rate | | | |
|---|---|---|---|---|
| **YUL** | Qualification Type (as defined in Exhibit A) | Blended-Weighted Hourly Rate USD ** | Monthly Hours Goal | Fixed Monthly Fee ** |
| | Blended Skill Set | $     50.60 | 400 | $     20,240.03 |
| | Out of Scope Rate (Includes OT) | | | |
| | N/A | | | |
| | Buyer Furnished Equipment "BFE" | | | |
| | No | | | |
| | Buyer Furnished Facilities | | | |
| | Yes | | | |

\* The Monthly Hours Goal and Hourly Rate set forth in this Table A-1 are for reference purposes only, and the actual hours expended by Contractor do not affect the Fixed Monthly Fee.

\*\* The Fixed Monthly Fee in USD is to be paid in Canadian Dollars at the exchange rate on the day on which the monthly invoice is submitted.

**Term.** The Agreement for services at the location identified in this Exhibit shall be in effect until March 31, 2022 unless otherwise terminated or extended in accordance with Section 6 or Section 7 of the Agreement. Buyer may, at its sole option, extend the Term for an additional two (2) years by providing written notice to Seller at least thirty (30) days before the end of the initial term.

AEROTECH_000009

**Adjustments to Contract Amount and Annual Allocation Amounts.** The Fixed Monthly Fee set forth in Table A-1 shall remain fixed until the anniversary of the Annex Effective Date. For clarity, the Fixed Monthly Fee will not be adjusted.

**Staffing Levels.** Seller shall maintain staffing levels to meet the monthly hours goal of Service in accordance with the levels set forth in Table A-1. Buyer may, but is not obligated to, set work prioritization, review work to completion and plan future work activities with Seller's personnel.

**Bill Rates.** The above bill rates will be inclusive of all costs including but not limited to overhead, payroll, management, benefits, insurance charges, Seller's office supplies, Seller personal protective equipment (PPE) and administrative costs, etc.

**Service Hours:** Seller acknowledges that Buyer's locations require flexibility in terms of hours of service and agrees to work with Buyer to adjust agreed upon hours based on operational requirements. For this location, support service hours are: Mon-Fri 0800 – 1630; Sat-Sun 1000 – 1600.

**Operational Flexibility.** Seller acknowledges that Buyer's locations require flexibility in terms of staffing levels and agrees to work with Buyer to adjust headcount requirements based on operational requirements, technical efficiencies and the cross utilization of Seller's personnel.

**Travel Expenses.** From time to time Buyer may request Seller employees to travel to a station other than the employee's base station to repair out of service Equipment or other project work as assigned. If Seller accepts Buyers travel/work request, Buyer shall pre-approve all travel and reimburse Seller for reasonable costs of transportation, lodging, and meals (meals shall be capped at $51.00 USD per day).

Seller shall submit an invoice, with receipts documenting all travel expenses, to Buyer within forty-five (45) days for travel expenses incurred in accordance with this Annex.

**Equipment.** This Annex covers a list of specialized and non-specialized Equipment as provided below. The list provided in Table B-1 is for reference only, and is subject to change in accordance with Section 4 of the Agreement.

**Facilities Access for specialized equipment maintenance.** Where applicable, Seller shall allow Buyer, or a Buyer designated contractor, access to the Sellers maintenance facility as requested by Buyer with 4 hours prior notice during normal business hours for the purpose of performing maintenance on Buyer's specialized ground support equipment.

Aerotech Ground Support Services Contract MA-2012-03665: Airport Annex -YUL.1

AEROTECH_000010

**Use of Space for Third Party Services**.  Where applicable, Seller must obtain Buyer approval before proceeding with Third Party Services for this Airport Annex in accordance with the Agreement.  If approved, Seller may use the Buyer Furnished Facilities to perform preventative maintenance and repair services on ground support equipment owned by third parties (the "Third Party Services").

DELTA AIR LINES, INC.

By: *Allen S Goembel*

allen.s.goemb el@delta.com

Digitally signed by
allen.s.goembel@delta.com
DN:
cn=allen.s.goembel@delta.com
Date: 2017.03.27 12:42:15 -04'00'

Name: Allen Goembel

Title: Commodity Manager - Supply Chain

Date: March 27, 2017

Aerotech Ground Support Services

By: _____

Name: Thomas Folkot

Title: Director

Date: March 27, 2017

AEROTECH_000011

# YUL Table B-1: Equipment List SOW

Aerotech Ground Support Services Contract MA-2012-03665: Airport Annex -YUL.1

| maintained by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ AERO TECH |
| --- |

| Count of vehicle_type | | equipment_owner | |
| --- | --- | --- | --- |
| fleet_object / work_class | vehicle_type | DL | Grand Total |
| MOTOR / NON-SPECIALIZED | AIRCRAFT TOW TRACTOR | 4 | 4 |
| | BAGGAGE TRACTOR | 9 | 9 |
| | BELT LOADER | 6 | 6 |
| | FORKLIFT | 1 | 1 |
| | LAVATORY SERVICE CART | 2 | 2 |
| | WATER SERVICE CART | 1 | 1 |
| MOTOR / NON-SPECIALIZED Total | | 23 | 23 |
| MOTOR / SPECIALIZED | AC/HEAT COMBO | 1 | 1 |
| | AIR START | 1 | 1 |
| | GROUND POWER | 4 | 4 |
| | HEATER | 4 | 4 |
| MOTOR / SPECIALIZED Total | | 10 | 10 |
| NON-MOTOR / NON-SPECIALIZED | BAGGAGE CART | 15 | 15 |
| | CABIN ACCESS STAND | 2 | 2 |
| | STANDBY CART | 3 | 3 |
| | TOWBAR | 13 | 13 |
| NON-MOTOR / NON-SPECIALIZED Total | | 33 | 33 |
| STATIONARY / SPECIALIZED | BATTERY CHARGER | 7 | 7 |
| | WATER CABINET | 1 | 1 |
| STATIONARY / SPECIALIZED Total | | 8 | 8 |
| Grand Total | | 74 | 74 |